```
                     UNITED STATES DISTRICT COURT
                              FOR THE
                        DISTRICT OF VERMONT
```

MARTIN POST, JILL POST, JUDITH A.    :
DARK and WILLIAM LANGLAIS, on        :
behalf of themselves and others      :
similarly situated,                  :
                                     :
        Plaintiffs,                  :
                                     :
             v.                      :     Case No. 2:07-cv-252
                                     :
KILLINGTON, LTD., AMERICAN SKIING    :
COMPANY, SP LAND COMPANY, LLC,       :
SP II RESORT, LLC, KILLINGTON/PICO   :
SKI RESORT PARTNERS, LLC, and        :
S-K-I, LTD.,                         :
                                     :
        Defendants.                  :

MEMORANDUM and ORDER

There are four pending discovery motions in this class action: Plaintiffs' Motion to Compel (Doc. 77); Defendants SP Land Company, LLC and SP II Resort, LLC's ("SP Defendants") Motion to Compel (Doc. 79); Plaintiffs' Motion to Compel Deposition Testimony (Doc. 92); and Plaintiffs' Motion to Compel Documents (Doc. 105).

I.  **Plaintiffs' Motion to Compel (Doc. 77)**

The Plaintiffs' first motion to compel was granted in part and reserved in part in this Court's Order dated October 14, 2008. Pursuant to the Order, Defendant Killington/Pico Ski Resort Partners, LLC ("KSRP") produced its withheld emails, consisting of seventy-two documents, for in camera review, along with a detailed privilege log. KSRP argues that the withheld emails are immune from discovery under the work product doctrine,

and additionally that some emails are protected by attorney-client privilege.

Federal Rule of Civil Procedure 26(b)(3) "grants limited protection against discovery to documents and materials prepared 'in anticipation of litigation,'" *United States v. Adlman*, 134 F.3d 1194, 1194-95 (2d Cir. 1998), by or for a party or its representative. If discovery is ordered, a court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). "'[A]t its core, the work-product doctrine shelters the mental process of the attorney, providing a privileged area within which he can analyze and prepare his client's case.'" *Adlman*, 134 F.3d at 1195 (quoting *United States v. Nobles*, 422 U.S. 225, 238 (1975)).

In *Adlman*, the Second Circuit decided that the appropriate inquiry, in determining whether material was prepared in anticipation of litigation, is simply "whether the documents were prepared 'because of' existing or expected litigation," *id.* at 1198, although documents prepared in the ordinary course of business or that would have been created in essentially similar form regardless of the litigation are not protected. *Id.* at 1202.

KSRP has asserted that by May of 2007 it was anticipating

that the passholder issue would end up in litigation, and that any documents produced by Killington employees, by principals in the assorted companies involved in the sale of the ski resort or by the attorneys that related to the passholder issue are work product. The other Defendants claim that they anticipated the likelihood of litigation as early as late March of 2007.

Granting for the sake of argument that the Defendants were anticipating a court fight as early as spring of 2007, KSRP must still demonstrate that the documents it seeks to withhold were *prepared because of* existing or expected litigation, rather than in the regular course of business. Having reviewed the documents, it is clear that most of them have little or nothing to do with preparing a defense to anticipated litigation over refusing to honor the investor passes. With few exceptions the documents do not come close to revealing any "opinion work product." By and large these are communications among corporate employees concerning the treatment of investor passes. They were not created by or for counsel or even shared with counsel at the time. That various corporate representatives and counsel foresaw that the issue might result in a lawsuit does not convert every email with "investor pass" or the like in its subject heading into work product.

Although it is true that work product protection extends to material that may also have a business purpose, and to material

that may not have actually been prepared by an attorney, ordinary business communication does not receive work product designation merely because of a potential lawsuit. Accordingly, only the following documents may be withheld from discovery as work product and/or attorney client communication:

**TAB**

7. Discussion of investor passes and complaints filed with Vermont Attorney General's office. Includes work product and attorney client communications.
8. Exchange of emails between Groom and Selbo concerning investor passes. Includes work product; Selbo email should not be disclosed, but Groom's factual response is not protected.
10. Re draft letter to the editor. Contains work product. Should be produced in redacted form, with all references to attorney advice deleted and the June 30, 2007 Horrocks email withheld.
13. Re letter to passholders. Mentions legal strategies, includes work product.
26. Re meeting with attorney. Attorney client privilege.
28. Re letter to editor. Reveals legal strategy; work product.
35. Re passholder issues. References legal strategy; work product.
41. Re passholder letters. Attached spreadsheet is work product.
44. Re media statement. Work product.
45. Re media statements. Attorney-client privilege and work product.
47. Re passholders. Work product.
48. Re conference call. Attorney-client privilege and work product.
53. Background on passholders. Work product.
54. Spreadsheet re passholder complaints. Work product.
55. Letter drafts. Includes work product.
59. Re community response. Work product.

The remainder of the withheld documents are not immune from discovery, and must be produced.

**II.  SP Defendants' Motion to Compel (Doc. 79)**

     This motion was granted in part and reserved in part in this Court's order dated October 14, 2008.  The SP Defendants seek "all documents evidencing communications between the named Plaintiffs and any and all putative class members."  Plaintiffs have withheld all such communications on the ground of attorney-client privilege.  The Court's order directed Plaintiffs to produce the withheld material for in camera review, along with a detailed privilege log or other document showing the basis for withholding each item.  In response to the Court's order the Plaintiffs submitted a CD-Rom disk containing two files, one labeled Langlais ACP.pdf consisting of 974 pages, and one labeled Post ACP.pdf consisting of 374 pages.

     In a cover letter accompanying the submission the Plaintiffs made three assertions: 1) prior to retaining counsel concerned passholders formed an association, and various passholders sought legal advice; 2) during the course of this litigation the named plaintiffs have communicated with trial counsel and have summarized or forwarded these communications to members of the class, who in turn have communicated with counsel through the named plaintiffs; 3) counsel has forwarded drafts of pleadings and discovery requests to named plaintiffs who have shared these drafts with other class members and forwarded class members' comments to counsel.  Eventually the Plaintiffs provided chambers

with privilege logs for both files, totaling forty-eight pages. For a substantial number of entries the logs fail to demonstrate that the privilege is implicated on any of the three theories that Plaintiffs advanced. For example, the Langlais privilege log lists an email with Bates stamp 002070-002072 authored by Langlais and received by Samuel Segal, Lynda Hunt, Rob Kovalesky and named plaintiff Martin Post. The subject matter is identified as "Re: IMPORTANT: Info for Rob as he prepares documentation for Rep Sanders." Neither author nor recipients are identified as attorneys or attorney representatives, nor does the subject matter suggest that the communication is made for the purpose of facilitating the rendition of legal services. There are series of emails for which no subject matter is identified, and neither author nor recipients are identified as attorneys, making it impossible to assess the claim of attorney-client privilege. *See, e.g.*, Langlais privilege log, Bates stamp 002740-41, 002742, 002745, 002746, 002874, 002875, 002890-91.

Review of the documents themselves suggests that some but not all material may in fact constitute protected communication, but a substantial number of documents lack any context or explanation that would enable the Court to evaluate the claim of privilege.

Given that the context of the motion to compel was pre-certification of the class, the number of documents now at issue

post-certification may be significantly smaller.  Rather than require Plaintiffs to submit additional annotation on the original volume of material, the Court observes and directs as follows.

Confidential communication between class members and counsel are protected by attorney-client privilege.  Confidential communications among class members made for the purpose of facilitating the rendition of professional legal services are protected by attorney-client privilege.  *See* V.R.E. 502(a), (b). Confidential communication that took place before the class was certified may be protected by the privilege, if it constituted communication between a putative class member and prospective counsel or among members of the association and prospective counsel, was made for the purpose of obtaining or providing legal advice, was intended to be kept confidential, and was in fact kept confidential.  The fact of legal consultation is not privileged.  Communications among passholders generally are not protected by the privilege, even if they are discussing matters related to the lawsuit, unless made specifically for the purpose of facilitating the rendition of legal services to the class. Drafts of legal documents or documents that contain mental impressions or legal theories of the attorneys may be immune from discovery as work product regardless of their status as attorney-client confidential communication.

7

Given these guidelines, the Plaintiffs are directed to produce a revised privilege log to the Defendants and to confer in an effort to resolve any privilege disputes. The SP Defendants may renew their motion should the issues remain unresolved. In response the Plaintiffs must make an express and specific claim as to each document, identifying the nature of the communication, its author and its recipients and the basis for the claim. The Plaintiffs bear "[t]he burden of establishing the existence of an attorney-client privilege, in all of its elements." *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 119 F.3d 210, 214 (2d Cir. 1997). "That burden is not . . . discharged by . . . conclusory or ipse dixit assertions." *In re Bonanno*, 34 F.2d 830, 833 (2d Cir. 1965). Any submission to the Court for in camera review must include a revised privilege log for the documents remaining at issue, identification of authors and recipients, only those documents that remain at issue, and any affidavits or other evidence that may be appropriate to create a factual basis for the assertion of the privilege.

**III. Plaintiffs' Motion to Compel Deposition Testimony (92)**

The Plaintiffs have moved to compel deposition testimony from several witnesses[1] who were instructed not to answer

---

[1] Christopher Nyberg, president and general manager of KSRP; Steven Selbo, president of SP Land and SP II; Allen Wilson, employee of Killington; Tara Arneson, employee of Killington, now

questions at their depositions in September 2008 on the basis of work product or attorney client privilege.

The Defendants have now agreed to allow Nyberg, Wilson, and Arneson to answer all deposition questions at issue, and Selbo and Groom to answer some of the deposition questions at issue. Remaining at issue, according to the Plaintiffs' Reply Brief, are the following questions:

- what work Selbo (the president of SP Land) did with the Vice President of Marketing and Sales at Killington with regard to the bondholder passes;

- what work/dealings Selbo had with Powdr Corp.'s President with regard to the bondholder passes;

- what work Selbo did with Powdr Corp.'s CFO with regard to the bondholder passes;

- whether anyone from KSRP is affiliated with Eiger Fund I LP;

- the basis for the Assistant to the President's (Groom's) belief that there would be an answer to the bondholder pass question in "a few weeks" (in April of 2007);

- the basis for Groom's statement to the Bank of New York that the annual transferable and P Pass certificates handled by the Bank of New York were no longer valid;

- the basis of Groom's statement to the Bank of New York that the Bank of New York would no longer be the transfer agent for the bondholder passes;

- who decided that the Bank of New York would no longer be the transfer agent for the bondholder passes;

- the basis for Groom's understanding, conveyed to the Bank of New York, that information regarding the bondholder passes was necessary for the closing of the resort purchase;

employee of KSRP; Saskia Groom, employee of Killington, now employee of KSRP.

- why Groom created a spreadsheet of bondholder passes in alphabetical order with pass number and date of issuance;

- what documents Groom was asked to provide to representatives of the purchasers of the resort regarding the bondholder passes.

The Defendants contend that the questions seek the disclosure of the substance of confidential communications among individuals within the scope of the attorney-client privilege.

Vermont Rule of Evidence 502(b)[2] provides that "[a] client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client" between and among the client, the lawyer, and representatives of the client and the lawyer. V.R.E. 502(b).

> A "representative of the client" is (A) a person having authority to obtain professional legal services or act on advice rendered pursuant thereto, on behalf of the client, or (B) any other person who, while acting in the scope of employment for the client, makes or receives a confidential communication necessary to effectuate legal representation for the client.

V.R.E. 502(a)(2); *see also* Vt. Stat. Ann. tit. 12, § 1613.

By this definition Selbo is a representative of the client under subsection (A) (and a member of the control group of the corporation under § 1613). Groom is a representative of the

---

[2] In a civil action where jurisdiction is based on diversity and the case is governed by Vermont law, privilege issues are determined in accordance with Vermont law. *See* Fed. R. Evid. 501.

10

client under subsection (B) only when she is making or receiving a confidential communication necessary to effectuate legal representation. The client may refuse to disclose "confidential communications made for the purpose of facilitating the rendition of professional legal services to the client" between representatives of the client. In the corporate context, if the communications are with a representative of the client who is not a member of the control group of the corporation acting in his or her official capacity, communications are privileged "only to the extent necessary to effectuate legal representation of the corporation." *Id*.

As an initial matter, the remaining questions as identified in the Plaintiffs' reply brief do not seek the substance of communications, privileged or otherwise. Any deposition questions that seek purely factual information do not implicate attorney-client privilege. Thus the questions about what work Selbo did on the passes, whether anyone is affiliated with the Eiger Fund, who decided that Bank of New York would no longer be the transfer agent, why Groom created a spreadsheet, or what documents she was asked to provide to the resort buyers do not necessarily require answers that disclose confidential communications made or received. As to the "basis" questions, were Groom's answers to be that her basis derives from another representative of the client or from legal counsel, that answer

is not protected, but further questions about what she was told would be privileged.  Were Groom's answer to be factual, the answer is not protected.  Accordingly, the Plaintiffs' motion is granted as to the remaining questions.

The parties are concerned, of course, not only with the remaining questions, but with the status of follow-up questions.  The Defendants contend that follow-up to the remaining questions will necessarily involve the invasion of confidential communications made for the purpose of facilitating the rendition of professional legal services.  The fact that confidential communications took place is not privileged, however, and Plaintiffs may ask questions that elicit responses identifying the communicators, the time and the place, and the like.  They may also elicit facts to enable them to assess a claim that a communication fits within the privilege.  The substance of communications between or among representatives of a client corporation, or between them and its attorney or representatives of its attorney, are privileged to the extent that they are made for the purpose of facilitating the rendition of legal services to the client, or in Groom's case to the extent that the communication was necessary to effectuate legal representation.

The Defendants also seek attorney-client privilege protection for communications among representatives of the various corporate defendants under a "joint defense" or "common

interest" rule. The "common interest" rule "has been described as 'an extension of the attorney client privilege,' [that] serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989) (quoting *Waller v. Fin. Corp. of Am.*, 828 F.2d 579, 583 n.7 (9th Cir. 1987)). "Only those communications made in the course of an ongoing common enterprise and intended to further the enterprise are protected." *Id.*

The Defendants argue that a broad construction of the common interest rule is a logical extension of Vermont Rule of Evidence 502, contending that not only should communications passing from one party to the attorney for another party be privileged, but the protection should extend to communications between parties with a shared interest in actual or potential litigation. Vermont, however, in keeping with many jurisdictions, takes a narrow view of protections from pretrial discovery, including the protection afforded by the attorney-client privilege. *See State v. Rehkop*, 980 A.2d 488, 494 (Vt. 2006) ("'exceptions to the demand for every man's evidence are not lightly created nor expansively construed'") (quoting *United States v. Nixon*, 418 U.S. 683, 709-10 (1974)); *see also In re Grievance of Danforth*,

812 A.2d 845, 853 (Vt. 2002) (Vermont Supreme Court's approach to privilege doctrine disfavors privilege because it interferes with the truth seeking function of litigation); *Baisley v. Missisquoi Cemetery Ass'n*, 708 A.2d 924, 929 (Vt. 1998) (noting that interpreting the lawyer-client privilege broadly in the corporate context "would create a vast zone of silence around corporate affairs").

Vermont's attorney-client privilege rule sets forth five specific circumstances in which a client may protect confidential communications from disclosure. Rule 502(b)(3) provides that in matters of common interest the privilege applies to prevent disclosure of confidential communications "by [the client] or his representative or his lawyer, or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein." V.R.E. 502(b)(3). Rule 502(b)(4) protects confidential communications between representatives of the same client. Vermont's privilege rule precisely distinguishes between protection extending to communications between representatives of one client, and communications between a representative of the client and the lawyer or representative of a lawyer representing another party concerning a matter of common interest. There is no basis under Vermont law, given a clear rule and the admonition to construe the rule narrowly, to conflate the two provisions of

the rule and extend the attorney-client privilege to communications among representatives of different corporate clients in the absence of their attorneys or representatives. It is thus unnecessary in this case to determine whether or when or with whom the Defendants decided to undertake a joint defense strategy, or whether and under what circumstances the common interest rule may apply prior to actual litigation.

For these reasons the remaining questions are not protected from disclosure. The Court declines to award expenses or costs, however, finding that defense counsel have not multiplied the proceedings "unreasonably or vexatiously," and that their concerns over the general contours of the attorney-client privilege in this case were substantially justified even though the Plaintiffs prevailed on their view of the privilege, such that an award of expenses would be unjust. *See* 28 U.S.C. § 1927; Fed. R. Civ. P. 37(a)(5)(A).

**IV. Plaintiffs' Motion to Compel Documents (105)**

This motion seeks documents from SP Land Company and SP II Resort. The documents are emails, and have been withheld on the basis of attorney-client privilege and work product. As set forth above, regardless of whether and when the Defendants reasonably anticipated litigation, they do not demonstrate that the emails are work product merely because the subject of the emails is the same as the subject of the lawsuit. Unless there

is evidence that the emails are documents that were prepared because the Defendants expected to be sued, rather than prepared because the Defendants knew they had a potential public relations disaster on their hands, the emails are not immune from discovery. If the SP Defendants' emails are similar to the KSRP emails, they must be produced.

Likewise, the above analysis of the scope of the attorney-client privilege should inform the production of the challenged documents. Should the parties remain at odds over any documents for which work product protection or attorney-client privilege continues to be claimed, the SP Defendants may provide the remaining documents for in camera review.

Accordingly, Plaintiffs' Motion to Compel (Doc. 77) is **granted in part and denied in part.** The SP Defendants' Motion to Compel (Doc. 79) is **granted in part and denied in part without prejudice to renew the motion.** The Plaintiffs' Motion to Compel Deposition Testimony (Doc. 92) is **granted in part and denied in part**; the request for sanctions is denied**.** The Plaintiffs' Motion to Compel Documents (Doc. 105) is **granted,** with the proviso that the SP Defendants may apply for in camera review of any remaining documents that they contend are protected as delineated in this decision.

Dated at Burlington, Vermont this 14th day of January, 2009.


/s/ William K. Sessions III
William K. Sessions III
Chief Judge